**THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**
**CIVIL CASE NO. 1:19-cv-00082-MR-WCM**

| | |
|---|---|
| **DELTA WALSH,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **MEMORANDUM OF** |
| **vs.** ) | **DECISION AND ORDER** |
| ) | |
| **FORREST GILLIAM, County Manager** ) | |
| **for Madison County, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Motion to Dismiss Plaintiff's

Amended Complaint filed by the Defendants Forrest Gilliam, James

Harwood, Bobby Gosnell, Bobby Gosnell Transport, County of Madison,

Madison County Sheriff's Department, Madison County Department of

Social Services, Connie M. Harris, and Mandie Sluder [Doc. 20]

and Defendant Dewain Mackey's Motion to Dismiss [Doc. 24].

## I.    BACKGROUND

### A.    The 2011 Civil Action

On December 2, 2011, the *pro se* Plaintiff Delta Walsh filed a complaint

on behalf of herself and her minor children, R.M., R.W., W.W., and R.K. [Civil

Case No. 1:11-cv-00321-MR-DCK ("CV-321"), Doc. 1: Complaint].   The

Court denied the Plaintiff's application to proceed *in forma pauperis*. [CV-321 Doc. 4]. In that Order, the Court cautioned that an initial review of the complaint "disclose[d] a significant possibility that the claims raised therein are not cognizable in the law and may well be considered legally frivolous." [Id. at 2]. The Plaintiff was allowed an extension of time to amend her complaint and pay the requisite fees to the Court. [CV-321 Doc. 6: Order].

The Plaintiff filed an amended complaint on February 17, 2012, identifying approximately twenty (20) defendants, including her neighbor, Dewain Mackey ("Mackey"), in both his individual and official capacities as an employee of the Madison County Schools and Vice-Chairman of the Madison County Planning/Zoning Board; the Madison County Sheriff's Department; and Madison County Sheriff James Harwood. [CV-321 Doc. 7: Amended Complaint]. In this lengthy and rambling pleading, the Plaintiff alleged multiple violations of 42 U.S.C. §§ 1981, 1983, 1985, and 1986, as well as various tort claims under state law, including legal malpractice, conspiracy to oppress, misconduct in public office, obstruction of justice, and judicial and/or official abuse. [Id. at 23-25]. The Plaintiff sought approximately twenty million dollars ($20,000,000.00) in compensatory damages, as well as punitive damages, attorneys' fees, and declaratory and injunctive relief. [Id. at 25-27].

The genesis of the 2011 lawsuit appeared to be a series of ongoing disputes and conflicts between the Plaintiff and Mackey regarding alleged trespass, negligence, and/or property damage, including by Mackey's livestock. [See CV-321 Doc. 49 at 3]. In the 2011 Action, the Plaintiff contended that Mackey had harassed, intimidated, bullied, stalked, and/or threatened her and her minor children. [CV-321 Doc. 7 at 4]. The Plaintiff also generally alleged that all the named defendants were guilty of "an unlawful criminal conspiracy" to deny the Plaintiff and her minor children due process and equal protection under the law. [Id.].

Several of the named defendants moved to dismiss the action for lack of subject matter jurisdiction and for failure to state a claim. Defendant Mackey and others moved for a more definite statement, arguing that the amended complaint was "so vague and ambiguous that these Defendants cannot reasonably be required to frame a responsive pleading to it." [CV-321 Doc. 23 at 1]. The Plaintiff, in turn, moved to file a second amended complaint. [CV-321 Doc. 9].

Magistrate Judge David C. Keesler filed a Memorandum and Recommendation [Doc. 49] in which he recommended granting some of the defendants' motions to dismiss based on Eleventh Amendment and common law sovereign immunity principles and denying the other defendants'

motions to dismiss without prejudice (including the motion to dismiss filed by Madison County Sheriff Harwood, Defendant Mackey in his capacity as Vice-Chairman of the Madison County Planning/Zoning Board, and the Madison County Sheriff's Department). In the Memorandum and Recommendation, the Magistrate Judge also ruled on the two pending non-dispositive motions, granting the Plaintiff leave to file a second amended complaint and denying as moot Defendant Mackey's motion for a more definite statement. [Id.].

The Plaintiff objected to the Memorandum and Recommendation. [CV-321 Doc. 52]. In an Order entered on August 3, 2012, this Court adopted the Memorandum and Recommendation and gave the Plaintiff twenty (20) days to file either a second amended complaint or a voluntary dismissal of the action. [CV-321 Doc. 56]. On August 20, 2012, rather than filing an amendment or a voluntary dismissal, the Plaintiff filed a Notice of Appeal from the Court's Order. [CV-321 Doc. 57]. Because the time within which the Plaintiff could have filed an amendment or voluntary dismissal had expired and she did not take either course of action, this Court dismissed the case. [CV-321 Doc. 59]. The Plaintiff filed a Notice of Appeal of the Order dismissing the case, [CV-321 Doc. 62], but she subsequently withdrew that appeal on December 12, 2012. [CV-321 Doc. 65].

## B.     The 2019 Civil Action

The Plaintiff commenced the present civil action on March 11, 2019, against the following Defendants:

(1)     Forest Gilliam, County Manager for Madison County, in his official and individual capacities;

(2)     James Harwood, individually and in his official capacity as Sheriff of Madison County;

(3)     Bobby Gosnell, individually and in his "professional" capacity as a deputy employed by the Madison County Sheriff's Department;

(4)     Bobby Gosnell Transport;

(5)     John Doe, individually and his "professional" capacity as a deputy of the Madison County Sheriff's Department; and

(6)     John Doe Surety Insurance Company, also referred to as John Doe Insurance Company.

[Doc. 1].  Unlike the 2011 action, the Plaintiff brought this action solely on her own behalf and did not include any of her children as parties.  [Id.]. Before any of the Defendants answered the Complaint, the Plaintiff filed an Amended Complaint pursuant to Rule 15(a)(1) of the Federal Rules of Civil Procedure.  [Doc. 11].  This Amended Complaint adds the following parties as Defendants:

(7)     Madison County;

(8)     Madison County Sheriff's Department;

(9)    Madison County Department of Social Services;

(10)   Connie M. Harris, individually and in her official capacity as Director of the Madison County Department of Social Services;

(11)   Mandie Sluder, individually and in her official capacity as an employee of the Madison County Department of Social Services;

(12)   Dewain Mackey, individually and in his "professional" capacity doing business as Mackey Farms; and

(13)   "John Does, Mary Does, as yet unknown, and others unnamed."

[Doc. 11]. Defendants Madison County, Madison County Manager Gilliam, Madison County Sheriff Harwood, Deputy Gosnell, Deputy Doe, Madison County Sheriff's Department, Madison County Department of Social Services, Connie M. Harris, and Mandie Sluder shall hereafter be referred to collectively as "the Madison County Defendants."

The Amended Complaint in the 2019 Action restates many of the same allegations as asserted in the 2011 action regarding Mackey's alleged trespass, property damage, and harassment of the Plaintiff. [See Doc. 11]. The Plaintiff also reasserts her allegations that Mackey and other County officials are engaged in a (now fifteen-year-long) conspiracy to deny her due process and equal protection of the law. [Id.]. The Plaintiff again asserts several federal causes of action, including claims under 42 U.S.C. §§ 1981, 1982, 1983, 1985, 1986, and 1988, as well as various alleged state tort

claims including "conspiracy to oppress," "misconduct in public office," and "obstruction of justice." [Id. at 6, 25-27].

While the allegations of the current Amended Complaint are largely duplicative of the allegations asserted in the 2011 Civil Action, the Plaintiff also includes new allegations related to the arrest of the Plaintiff's employee, Frank Gooden, at the Plaintiff's residence on March 11, 2016. Regarding that incident, the Plaintiff alleges as follows.

In the evening hours of March 11, 2016, Deputy Gosnell and Deputy John Doe (also referred to in the Amended Complaint as "Officer J"), arrived at the Plaintiff's home, where she resides with three minor children. On that evening, one of the Plaintiff's employees, Frank Gooden, was babysitting two of the Plaintiff's minor children. Gooden responded to a knock on the front door. According to the Amended Complaint:

> Officer "J" was standing outside the door, armed, and in full uniform, and asked, "Are you Frank Gooden?" Gooden identified himself, and Officer "J" immediately handcuffed him and told him that he had a warrant for his arrest. Then Officer Gosnell appears from the corner of the house with an aimed firearm in place, in a loud intimidating voice, "I thought you'd come out with guns blazing!" Gooden replied, "we have no guns." Gosnell pushed and shoved Gooden, while handcuffed, inside the house from the front porch/deck to a chair in the living room, [and] conducted himself as though Gooden was a

violent criminal. Defendant Gosnell then instructed Officer "J" to "shoot him if he moves!"

Meanwhile, Gosnell is rambling through Gooden's wallet, and apparently took away and removed his Government issued, Department of Defense Contractor's card. Gosnell started asking in a loud, demanding tone of voice, "where are all those assault weapons and explosives?" Officer Gosnell walked through Plaintiff's house opening cabinets, rummaging, and slamming doors; opening and slamming drawers, and throwing clothing everywhere; kicking over a cat litter box; and yelling in a loud tone over and over, traumatizing said minor children, and demanded to know where the guns were hidden.

[Doc. 11 at 24].

The Plaintiff alleges that the officers who arrested Gooden had no warrant in hand and did not otherwise produce a warrant.[1] [Id.]. Deputy Gosnell continued questioning the Plaintiff's minor children, demanding to know the location of the assault rifles and explosives. [Id. at 24-25]. The children told him there were no guns on the premises. [Id. at 25]. Deputy Gosnell accused the children of lying. [Id.]. After Deputy Doe left with

---

[1] In her Response to the Madison County Defendants' Motion to Dismiss, the Plaintiff concedes that there was in fact a warrant issued by Buncombe County in 2008 for Frank Gooden's arrest, but that this warrant was "dormant" at the time of the March 11, 2016 incident. [Doc. 40 at 3 n.3]. The Plaintiff further contends that this "dormant" warrant was "exploited as a means of gender harassment, and executed in furtherance of a color of law conspiracy and sinister plot against Plaintiff, the Defendants' 'intended' object." [Id.].

Gooden in custody, Deputy Gosnell accompanied the Plaintiff's minor son to the bathroom and watched as the child urinated. [Id.]. Deputy Gosnell told the child that he was making sure that the child did not "flush any drugs down the toilet." [Id. at 25].

Deputy Gosnell contacted the Madison County Department of Social Services and requested assistance, as no adults remained on the premises after the arrest of Frank Gooden. [Id.]. Defendant Mandie Sluder, a social worker employed by the Department of Social Services, arrived on the scene. [Id.]. The Plaintiff arrived home a few minutes later. [Id.]. The Plaintiff alleges that Defendant Sluder "displayed very professional conduct" toward her, while Deputy Gosnell made several intimidating and degrading remarks to her. [Id.]. The Plaintiff further alleges that Deputy Gosnell "went several times back and forth to his vehicle and appeared to be talking and exchanging information on the telephone, being overhead talking to a 'Dewain.'" [Id.].

The Madison County Defendants now move to dismiss the Plaintiff's Amended Complaint. [Doc. 20]. Defendant Mackey separately moves to

dismiss the Amended Complaint. [Doc. 24]. The Plaintiff responded to both motions [Docs. 40, 41],[2] and the Defendants have replied [Docs. 42, 43].

These motions are now ripe for disposition.

## II.  STANDARD OF REVIEW

### A.  Rule 12(b)(1) Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) addresses whether the Court has subject matter jurisdiction to hear the dispute. See Fed. R. Civ. P. 12(b)(1). Where a defendant contends that a complaint fails to allege facts upon which subject matter jurisdiction can be based, the Court must assume as true the factual allegations in the Complaint. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). If, on the other hand, a defendant contends that the jurisdictional allegations contained in the complaint are false, the court may go beyond the allegations of the complaint and conduct an evidentiary hearing to determine if there are facts

---

[2] The Plaintiff initially filed responses in opposition to the Defendants' motion that were 27 pages and 75 pages long, respectively. The Court struck those pleadings on August 28, 2019 and afforded the Plaintiff the opportunity to file responses that complied with the page limitations set forth in the Court's Local Rules. [Doc. 39]. The Court will note that, although the Plaintiff's amended filings technically comply with the 25-page limit required by the Local Rules, the Plaintiff attempts to flout those rules by incorporating her substantive arguments into multiple, single-space footnotes spanning several pages. For example, the Plaintiff's Response to the Madison County Defendants' Motion to Dismiss contains 74 footnotes, including one footnote that is nearly two pages long. [See Doc. 40 at 3-6 n.5]. The Plaintiff is admonished that this practice is not acceptable and that future arguments contained in these types of lengthy footnotes will be summarily disregarded.

to support the court's exercise of jurisdiction over the dispute. Id. The burden of establishing subject matter jurisdiction on a motion to dismiss rests with the party asserting jurisdiction. Id.; Williams v. United States, 50 F.3d 299, 304 (4th Cir. 1995).

### B. Rule 12(b)(6) Standard

The central issue for resolving a Rule 12(b)(6) motion is whether the claims state a plausible claim for relief. See Francis v. Giacomelli, 588 F.3d 186, 189 (4th Cir. 2009). In considering a defendant's motion, the Court accepts the plaintiff's allegations as true and construes them in the light most favorable to the plaintiff. Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009); Giacomelli, 588 F.3d at 190-92. Although the Court accepts well-pled facts as true, it is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ." Consumeraffairs.com, 591 F.3d at 255; see also Giacomelli, 588 F.3d at 189.

Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The claims need not contain "detailed factual allegations," but must contain sufficient factual allegations to suggest the required elements of a cause of action. Bell Atlantic Corp. v. Twombly,

550 U.S. 544, 555 (2007); see also Consumeraffairs.com, 591 F.3d at 256. "[A] formulaic recitation of the elements of a cause of action will not do." Id. Nor will mere labels and legal conclusions suffice. Id.

The complaint is required to contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570; see also Consumeraffairs.com, 591 F.3d at 255. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; see also Consumeraffairs.com, 591 F.3d at 255. The mere possibility that a defendant acted unlawfully is insufficient for a claim to survive a motion to dismiss. Consumeraffairs.com, 591 F.3d at 256; Giacomelli, 588 F.3d at 193. Ultimately, the well-pled factual allegations must move a plaintiff's claim from possible to plausible. Twombly, 550 U.S. at 570.

## III. DISCUSSION

### A. Defendant Mackey's Motion to Dismiss

Setting aside the allegations pertaining to the events of March 11, 2016 (which the Court will discuss in more detail below), the Amended Complaint sets forth the same allegations against Defendant Mackey as the Plaintiff asserted in the 2011 Action. In the previous suit, the Plaintiff alleged that Defendant Mackey: allowed his animals to trespass on her property; backed

a school bus up in her driveway to intimidate her; tried to run her and her sons off the road; killed her dog "Duke"; had "noxious odors" on his farms; and was breaking and entering into her property. [CV-321 Doc. 7]. In that case, the Court dismissed the Plaintiff's claims after the Plaintiff failed to amend her complaint after being given the opportunity to do so in response to the Defendants' motion for a more definite statement. [CV-321 Doc. 56]. The Plaintiff ultimately withdrew her appeal of that dismissal [CV-321 Doc. 59-, and as such the judgment [CV-321 Doc. 60] entered in that case is final.

In the present Amended Complaint, the Plaintiff asserts the same allegations against Defendant Mackey. [Doc. 11]. She alleges that Defendant Mackey allowed his animals to trespass on her property; that he backed a school bus up in her driveway to intimidate her; that he tried to run her and her sons off the road; that he killed her dog "Duke"; that he had "noxious odors" on his farms; and that he committed a breaking and entering into her property. [Id.]. She alleges that after she complained of these events and filed her 2011 Civil Action for damages arising from these claims, she was subjected to "gender intimidation and gender discrimination in the state court system" by County officials, who were allegedly acting in an attempt to protect Mackey. [Doc. 11 at 10]. The Plaintiff does not allege that

any of these alleged specific acts by Mackey continued after the filing of her first lawsuit in 2011, but rather indicates the contrary. [Id. at 9-10].

Under the doctrine of res judicata, "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Pueschel v. United States, 369 F.3d 345, 354 (4th Cir. 2004) (quoting Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981)). "By precluding parties in a subsequent proceeding from raising claims that were or could have been raised in a prior proceeding, "[r]es judicata . . . encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes." Id. (quoting Brown v. Felsen, 442 U.S. 127, 131 (1979)). Rule 41(b) of the Federal Rules of Civil Procedure specifies that actions dismissed by a court for a plaintiff's failure to prosecute or to comply with the Court's rules or orders "operates as an adjudication on the merits."

To the extent that the Plaintiff attempts to assert any of the aforementioned claims against Defendant Mackey, such claims clearly arise out of the same transactions and occurrences that were alleged previously. This Court's dismissal of the 2011 Action operates as an adjudication on the merits of those claims. Accordingly, the Court concludes that, with the exception of the claims related to the events of March 11, 2016 and after,

the doctrine of res judicata precludes the Plaintiff's claims against Defendant Mackey.

Even if the Plaintiff's claims against Defendant Mackey related to these pre-March 11, 2016 events were not so barred, the Court concludes that such claims are subject to dismissal as being barred by the applicable statute of limitations. "Ordinarily, a defense based on the statute of limitations must be raised by the defendant through an affirmative defense, and the burden of establishing the affirmative defense rests on the defendant." Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (internal citation omitted). Therefore, the Court generally cannot reach the merits of an affirmative defense in ruling on a motion to dismiss under Rule 12(b)(6). Id. Only in those unusual circumstances where all facts necessary to the affirmative defense "clearly appear[ ] on the face of the complaint," may the Court address an affirmative defense at the motion to dismiss stage. Richmond, Fredericksburg & Potomac R.R. Co. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993).

Here, the Amended Complaint was filed on March 11, 2019. It is clear on the face of the Plaintiff's Amended Complaint that all the Plaintiff's claims against Defendant Mackey—with the exception of the events of March 11, 2016 and after—arise from events that occurred clearly beyond the

applicable statute of limitations.³  Thus, to the extent that the Plaintiff is not barred by the doctrine of res judicata, the Plaintiff's claims against Defendant Mackey arising from these pre-March 2016 events are also time barred.

As for the Plaintiff's claims arising from the events of March 11, 2016, the Court concludes that the Plaintiff fails to state a plausible claim against Defendant Mackey.   In the Amended Complaint, the Plaintiff alleges that the unlawful entry of her home by Deputy Gosnell and "Officer J" was the result of a conspiracy "between Defendants Gosnell, John Doe, Mackey, and others, to conduct an armed home invasion (without a warrant) with a pre-designed plan to falsely arrest and remove Frank Gooden . . . ." [See Doc. 11 at 7].  However, the only factual allegation that the Plaintiff makes even remotely implicating Defendant Mackey in the events of March 11, 2016, was that following the arrest of Frank Gooden, Deputy Gosnell "went several times back and forth to his vehicle and appeared to be talking and exchanging information on the telephone, being overhead talking to a 'Dewain.'"  [Doc. 11 at 25].  Such allegations are purely speculative and

---

³ Because no statute fixes a set limitation period for the Plaintiff's federal claims, the applicable limitations period is that which is provided for state tort actions for the recovery of personal injury damages.  See Wilson v. Garcia, 471 U.S. 261, 276 (1985). In North Carolina, the applicable statute is N.C. Gen. Stat. § 1-52(5), which provides a three-year limitations period for personal injury claims.  Taylor v. Deaver, No. 5:11-CV-341-H, 2012 WL 12905868, at *6 (E.D.N.C. Sept. 28, 2012).

conclusory and fail to assert any plausible claim against Defendant Mackey for participating in, or conspiring with others regarding, the events that are alleged to have occurred on March 11, 2016.

The Plaintiff further alleges that, as "a continuing act in furtherance [of] the violent home invasion of Plaintiff's home and property" on March 11, 2016, Defendant Mackey continues to harass her in various ways, including by trespassing on her property, taking pictures, and taking down tag numbers. [Doc. 11 at 13]. The Plaintiff also alleges that Defendant Mackey "[c]ontinues to be an imminent threat of harm and danger to Plaintiff," noting in particular that there have been three "suspicious dwelling fires in close proximity to Plaintiff's property." [Id.]. These allegations, too, are conclusory and speculative and fail to assert any plausible claim against Defendant Mackey for violating her civil rights or participating in a conspiracy with county officials to do so.

For all these reasons, the Plaintiff's claims against Defendant Mackey are hereby dismissed with prejudice.

**B.     The Madison County Defendants' Motion to Dismiss**

**1.     Various Federal Claims**

The Plaintiff attempts to assert a number of federal law claims against the Madison County Defendants for various alleged acts of wrongdoing under 42 U.S.C. § 1985 (Count I), 42 U.S.C. § 1981 (Count II); 42 U.S.C. § 1983 (Count III); 42 U.S.C. § 1986 (Count IV); 42 U.S.C. § 1988 (Count V); 42 U.S.C. § 1982 (Count VI); and 42 U.S.C. § 1343 (Count VII).

To state a claim under 42 U.S.C. § 1985 for conspiracy to violate civil rights, a plaintiff must show: (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy. Thomas v. The Salvation Army S. Territory, 841 F.3d 632, 637 (4th Cir. 2016) (citing Simmons v. Poe, 47 F.3d 1370, 1376 (4th Cir. 1995)).  The Plaintiff fails to allege that the Defendants engaged in any class-based discrimination.  Accordingly, the Plaintiff's § 1985 claim fails to assert a plausible claim against any of the Madison County Defendants, and those claims are hereby dismissed with prejudice.  Moreover, "[a] cause of action based upon § 1986 is dependent upon the existence of a claim under §

1985." <u>Trerice v. Summons</u>, 755 F.2d 1081, 1085 (4th Cir. 1985). Because the Plaintiff's allegations are insufficient to support a plausible claim under § 1985, she also fails to state a plausible claim under § 1986. Therefore, the Plaintiff's claim under § 1986 also must be dismissed for failing to state a claim upon which relief can be granted against any of the Madison County Defendants.

Sections 1981 and 1982 of Title 42 prohibit discrimination based on race. The Plaintiff makes no allegations, however, to claim that she is a member of a class protected by § 1981 or § 1982 or that she was discriminated against because of her race. As such, the Plaintiff fails to state a claim under § 1981 or § 1982 against any of the Madison County Defendants. <u>See e.g.</u>, <u>Nnadozie v. Genesis HealthCare Corp.</u>, 730 F. App'x 151, 157 (4th Cir. 2018) (stating that "at the very least, a Section 1981 claim must allege race-based discrimination"). Accordingly, those claims are hereby dismissed with prejudice.

Section § 1988 of Title 42 is a jurisdictional statute that "does not give rise to an independent cause of action." <u>ECOS, Inc. v. Brinegar</u>, 671 F. Supp. 381, 401 (M.D.N.C. 1987); <u>see also</u> <u>Mathis v. United Homes, LLC</u>, 607 F. Supp. 2d 411, 427 (E.D.N.Y. 2009) (stating that "section 1988 is a choice of law provision, nothing more."). Likewise, 42 U.S.C. § 1343 is also

"a jurisdictional statute that does not provide a cause of action." Drogin v. Yahoo, No. C 09-1368 PVT, 2009 WL 1393248, at *1 (N.D. Cal. May 14, 2009) (citing Allen v. Gold Country Casino, 464 F.3d 1044, 1048 (9th Cir. 2006)). As such, the Plaintiff fails to state a claim under 42 U.S.C. § 1988 or 42 U.S.C. § 1343 against any of the Madison County Defendants, and those claims are hereby dismissed with prejudice.

## 2. Acts Occurring Before March 11, 2016

Having dismissed the Plaintiff's other federal-law claims, the Court will address the Plaintiff's claims only as such claims may be asserted under § 1983. Other than the allegations pertaining to the events of March 11, 2016 (which the Court will address in greater detail below), the Amended Complaint sets forth the same wide-ranging allegations against the Madison County Defendants as the allegations made by the Plaintiff in the 2011 Civil Action. For the reasons stated above with respect to Defendant Mackey, the Plaintiff is barred from re-litigating such claims against the same Madison County Defendants in this action.[4] With regard to the Defendants who are named in this action but were not named in the 2011 Action, the Plaintiff

_____

[4] Further, the Plaintiff's allegations are purely speculative and conclusory and fail to assert any plausible claim against the Madison County Defendants for participating in, or conspiring with others regarding, the events that are alleged to have occurred before March 11, 2016.

makes only speculative and conclusory allegations that fail to state a plausible claim against those Defendants. As such, the Plaintiff's claims against the Madison County Defendants that relate to their alleged actions prior to March 11, 2016 are hereby dismissed with prejudice.

### 3. Acts Occurring on March 11, 2016

The remaining claims in the Plaintiff's Amended Complaint relate to the events of March 11, 2016, when Deputies Gosnell and Doe came to the Plaintiff's residence to arrest Frank Gooden. In her 43-page complaint, the Plaintiff asserts dozens of claims stemming from the events of March 11, 2016, including sexual harassment of her minor child, attempted murder, gender discrimination, "gender third-party harassment," and bullying, among many others. [Doc. 11 at 1-2].

### i. Claims for the Infringement of Others' Constitutional Rights

As a preliminary matter, the Court notes that the Plaintiff is barred from asserting any claims on behalf of her minor children. The Plaintiff's minor children are not named as plaintiffs in the present civil action. Even if they were, however, the Plaintiff cannot assert claims on their behalf in her capacity as a *pro se* plaintiff before this Court. See, e.g., Myers v. Loudoun Cty. Pub. Sch., 418 F.3d 395, 400101 (4th Cir. 2005) ("non-attorney parents

generally may not litigate the claims of their minor children in federal court"). Thus, to the extent that the Plaintiff attempts to assert any claims on behalf of her minor children, such claims are hereby dismissed with prejudice.

The Plaintiff likewise does not have standing to bring claims for false arrest, kidnapping, excessive force, police brutality or any other claims on behalf of her employee Frank Gooden. Because Fourth Amendment rights are "personal rights" that cannot be "vicariously asserted," Gooden is the only one who has standing to bring such claims. Alderman v. United States, 394 U.S. 165, 174 (1969). Accordingly, to the extent that the Plaintiff attempts to challenge Gooden's arrest or the validity or staleness of his arrest warrant or otherwise assert any claims on his behalf, those claims are also hereby dismissed with prejudice.

## ii.    Conspiracy Claims

The remainder of the Plaintiff's claims pertaining to the March 11, 2016 incident are premised in part on the Plaintiff's broad allegations of a fifteen-year-long, county-wide conspiracy against her. In essence, she alleges that the events of March 11, 2016 were orchestrated by the Madison County Defendants as part of their ongoing efforts to harass the Plaintiff, to discriminate against her, and to deprive her of equal protection and due process of law. A close examination of the Plaintiff's extensive allegations,

however, reveals no plausible facts to support such claims of a conspiracy among the Madison County Defendants. Therefore, the Plaintiff's claims against the Madison County Defendants based on these conspiracy theories are hereby dismissed with prejudice.

### iii. Individual Liability Claims – Gilliam, Harwood, and Harris

To state a claim for individual liability under 42 U.S.C. § 1983, a plaintiff must allege that "the official acted . . . personally in the deprivation of the plaintiff's rights." Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985). The Plaintiff has offered nothing more than conclusory assertions to claim that County Manager Gilliam, Sheriff Harwood, or Director Harris acted personally in the arrest of Frank Gooden or the search of her home.[5] Accordingly, the Plaintiff's individual capacity claims against Defendants Gilliam, Harwood, and Harris are hereby dismissed with prejudice.

---

[5] The Plaintiff also offers no allegations whatsoever to support any of her claims with respect to the Defendant identified as "Bobby Gosnell Transport." Accordingly, all claims asserted against Bobby Gosnell Transport are hereby dismissed as well.

### iv.   Official Capacity Claims

The Plaintiff also brings claims against all of the Madison County Defendants in their official capacities.[6]   The Plaintiff seems to argue that Madison County and Sheriff Harwood in his official capacity should be held liable for Deputy Gosnell, Deputy Doe, and Sluder allegedly violating her constitutional rights on March 11, 2016 and for failing to adequately supervise and train them.  [Doc. 11 at 5-6, 31].  With regard to Gosnell, Doe, and Sluder's training, the Plaintiff summarily alleges that Madison County and Sheriff Harwood had a "major deficiency in their policies, customs, and practices of law enforcement training."  [Id. at 5-6].[7]

---

[6]   The Plaintiff's official capacity claims against Defendants Gilliam, Gosnell, Doe, Harris, and Sluder are duplicative of the claims against their governmental employers.  As such, the Plaintiff's claims against Defendants Gilliam, Gosnell, Doe, Harris, and Sluder in their official capacities are hereby dismissed as duplicative.  Love-Lane v. Martin, 355 F.3d 766, 783 (4th Cir. 2004) (affirming the dismissal of an individual capacity § 1983 claim against a superintendent as essentially a claim against the Board of Education); Wright v. Town of Zebulon, 202 N.C. App. 540, 543-44, 688 S.E.2d 786, 789 (2010) (affirming the dismissal of official capacity claims against the mayor, the town manager, the police chief, and other officers as "duplicative" of claims against the municipality).

[7] To the extent that the Plaintiff attempts to assert these official capacity claims against the Madison County Sheriff's Department and the Madison County Department of Social Services, such claims must be dismissed as a matter of law.  The capacity of an entity to be sued is "determined by the law of the state where the court is located."  Fed. R. Civ. P. 17(b).  In North Carolina, "unless a statute provides to the contrary, only persons in being may be sued."  Coleman v. Cooper, 89 N.C. App. 188, 192, 366 S.E.2d 2, 5 (1988).  No statute authorizes suit against a sheriff's department or a department of social services.  See Parker v. Bladen Cty., 583 F.Supp.2d 736, 739-740 (E.D.N.C. 2008) (stating that sheriff's departments "lack the legal capacity to be sued."); Malloy v. Durham Cty. Dep't of Soc. Servs., 58 N.C. App. 61, 66, 293 S.E.2d 285, 289 (1982) (department of social services has no capacity to be sued).  Moreover, the Madison County Sheriff's

"Under Monell, municipalities are not liable pursuant to respondeat superior principles for all constitutional violations of their employees simply because of the employment relationship." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999) (citing Monell v. Dep't. of Soc. Servs., 436 U.S. 658, 692-94 (1978)). Rather, "municipal liability results only 'when execution of a government's policy or custom, whether made by its law makers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury....'" Edwards, 178 F.3d at 244 (quoting in part Monell, 436 U.S. at 694). Thus, the Plaintiff cannot seek to hold Madison County and Sheriff Harwood in his official capacity liable for the acts of Deputy Gosnell, Deputy Doe or Defendant Sluder under a theory of respondent superior. Instead, the Plaintiff must adequately allege a policy, practice or custom of the County or the Sheriff that resulted in the deprivation of her civil rights.

The Plaintiff has failed to identify any policy, practice, or custom of the County with respect to the Department of Social Services and its training and/or supervision of Defendant Sluder that would give rise to liability under

_____

Department and the Madison County Department of Social Services are not "persons" within the meaning of 42 U.S.C. § 1983. See Monell v. Dep't. of Soc. Servs., 436 U.S. 658, 688 & n.55 (1978) (noting that, for purposes of Section 1983 action, a "person" includes individuals and "bodies politic and corporate"). As such, the Plaintiff's claims against Defendant Madison County Sheriff's Department and Defendant Madison County Department of Social Services are hereby dismissed with prejudice.

§ 1983.  Accordingly, the Plaintiff's <u>Monell</u> claims against Madison County based on a policy, practice or custom of the Department of Social Services are dismissed with prejudice.

Similarly, with respect to the training and supervision of Deputy Gosnell and Deputy Doe, the Plaintiff fails to identify any municipal policy, practice, or custom that establishes liability under § 1983.  [<u>Id.</u>].[8]  The Plaintiff makes no plausible factual allegations to support her claim that Deputy Gosnell and/or Deputy Doe acted pursuant to an official policy or a custom maintained by Sheriff Harwood or the County.  <u>See</u> <u>Monell</u>, 436 U.S. at 690–91.  The Plaintiff does not identify a specific municipal policy or custom that relates to the events of March 11, 2016.  Further, the Plaintiff further makes no plausible allegations to support her claim that the County and/or Sheriff Harwood improperly trained Deputies Gosnell and Doe.  As such, the Plaintiff's allegations are plainly insufficient to show the existence of an

---

[8] Sheriff Harwood further argues that the Plaintiff fails to allege that he has waived sovereign immunity.  [Doc. 21 at 18].  While "North Carolina sheriffs are considered public officials for purposes of sovereign immunity[,]" <u>Efird v. Riley</u>, 342 F. Supp. 2d 413, 425 (M.D.N.C. 2004), a sheriff can waive sovereign immunity by obtaining insurance coverage under a county's liability insurance policy, N.C. Gen. Stat 153A–435, or by purchasing a surety bond.  N.C. Gen. Stat. § 58-76-5.  The Plaintiff does not make any specific allegations related to Sheriff Harwood's insurance coverage or purchase of a surety bond, other than including "John Doe Insurance Company" alongside Sheriff Harwood in the caption of the case.  [Doc. 11 at 1].  The Court, however, does not need to address the sovereign immunity issue because the Plaintiff's claims against Sheriff Harwood are being dismissed on another basis.

offending policy, custom, or practice sufficient to create impose liability on either Madison County or Sheriff Harwood in his official capacity. For those reasons, the Plaintiff's claims against Madison County and Sheriff Harwood in his official capacity are hereby dismissed with prejudice.[9]

### v.    Individual Capacity Claim -- Sluder

The Court next turns to the Plaintiff's claims against Defendant Sluder in her individual capacity related to her alleged actions on March 11, 2016.

The Plaintiff alleges that, following Gooden's arrest, Deputy Gosnell contacted Defendant Sluder, a social worker with the Madison County Department of Social Services, to come to the Plaintiff's home because there was no adult remaining at the home to supervise the Plaintiff's children. [Doc. 11 at 8].  The Plaintiff alleges that she herself arrived shortly after Sluder, and that Sluder "displayed very professional conduct" toward her. [Id. at 25].  Other than being present at the Plaintiff's home -- which Sluder only did because she was requested to do so by law enforcement -- the

---

[9] The Plaintiff also appears to assert a claim on the sheriff's bond by naming as a Defendant "John Doe Insurance Company," which is also referred to in the caption as "John Doe Surety Insurance Company."  See N.C. Gen. Stat. § 58-76-5 (surety is necessary party to proceeding against sheriff and sheriff's deputies in their official capacities).  Because the Court has dismissed the Plaintiff's claims against Sheriff Harwood and against Deputy Gosnell and Deputy Doe in their official capacities, to the extent that the Plaintiff has asserted a claim on the sheriff's bond, her claims against the Defendant identified as "John Doe Insurance Company" and "John Doe Surety Insurance Company" are dismissed as well.

Plaintiff does not identify any action by Sluder that harmed her or otherwise violated her rights. The Plaintiff's allegations are insufficient to support a claim against Defendant Sluder under state or federal law. As such, the Plaintiff's claims against Defendant Sluder in her individual capacity are hereby dismissed with prejudice.

### vi. Individual Capacity Claims – Gosnell and Doe

The Court now turns to the Plaintiff's remaining claims against Deputy Gosnell and Deputy Doe. While the Plaintiff's allegations are rambling and therefore difficult to discern, it appears that the Plaintiff is challenging two primary aspects of these Defendants' conduct on March 11, 2016: (1) the deputies' allegedly unlawful trespass on her property and (2) the deputies' alleged unlawful search of the Plaintiff's home following the arrest of Frank Gooden. [Doc. 11 at 7, 24].

With respect to the Plaintiff's claim that the officers unlawfully trespassed on her property, this claim is without merit. Law enforcement officers have the right to come onto the Plaintiff's property and knock on the door. See e.g., Rogers v. Pendleton, 249 F.3d 279, 289 (4th Cir. 2001) (stating that "just as private citizens may approach a home, absent contrary instructions from the owner, to knock on a door, so may the police approach without probable cause, a warrant, or exigency"). When the deputies here

did so, Gooden answered the door and identified himself, whereupon he was promptly arrested pursuant to an outstanding arrest warrant. As discussed above, the Plaintiff does not have standing to assert claims for any alleged violation of Gooden's Fourth Amendment rights. <u>See</u> <u>Alderman</u>, 394 U.S. at 174. As such, the Plaintiff's claim that the officers unlawfully "trespassed" on her property is entirely without merit and is hereby dismissed.

Next, the Plaintiff alleges that, following Gooden's arrest, the officers entered her residence and proceeded to search the premises, ostensibly for firearms and explosives. Construing the Plaintiff's Amended Complaint liberally, and construing all the well-pleaded factual allegations in her favor, it appears that the Plaintiff is attempting to assert that the deputies' search of her home was in violation of her constitutional rights.

The Fourth Amendment provides that: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The Due Process Clause of the Fourteenth Amendment levies on state governments the same restrictions that the Fourth Amendment imposes on the federal government. <u>Mapp v. Ohio</u>, 367

U.S. 643, 654-55 (1961). "It is a 'basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable.'" <u>Brigham City v. Stuart</u>, 547 U.S. 398, 403 (2006) (quoting <u>Groh v. Ramirez</u>, 540 U.S. 551, 559 (2004)). It is also, however, "beyond dispute that during the execution of an arrest warrant, law enforcement officers are authorized to perform a protective sweep of spaces in a home where a person posing a danger to the police could hide and launch an attack as long as the officers have a reasonable belief that the area swept could hold such a person." <u>United States v. Hall</u>, No. CRIM 3:09CR19, 2009 WL 3165458, at *7 (W.D.N.C. Sept. 29, 2009) (Reidinger, J.) (citing <u>Maryland v. Buie</u>, 494 U.S. 325 (1990)). "A protective sweep— where the circumstances justify it—does not entitle officers to conduct a full search of the premises, but rather extends only to a limited inspection of spaces where a person may actually be found." <u>United States v. Green</u>, 599 F.3d 360, 376 (4th Cir. 2010) (citing <u>Buie</u>, 494 U.S. at 333). That limited inspection 'is narrowly confined to a cursory visual inspection of those places." <u>United States v. Pettiford</u>, 51 F.3d 269 (4th Cir. 1995) (quoting <u>Buie</u>, 494 at 237. Law enforcement officers also are allowed to conduct a limited protective search "of the area within an arrestee's immediate control 'from

within which he might gain possession of a weapon or destructible evidence.'" Id. (quoting Chimel v. California, 395 U.S. 752, 763 (1969)).

The Plaintiff's Amended Complaint alleges sufficient facts to state a plausible claim that Deputies Gosnell and Doe violated her Fourth Amendment rights by searching her home without a warrant. While officers can conduct protective sweeps incident to arrest, those searches are generally limited to "spaces in a home where a person posing a danger to the police could hide and launch an attack." Buie, 494 U.S. at 325. Here, the Plaintiff alleges that Deputies Gosnell and Doe opened cabinets and drawers as part of their search. [Doc. 11 at 7, 24]. Moreover, the current factual record fails to clarify whether the cabinets or drawers that were allegedly searched were within Gooden's "grab area" when he was arrested. Because opening cabinets and drawers goes beyond the scope of a protective sweep, the Plaintiff has alleged sufficient facts to state a claim for a violation of her Fourth Amendment rights as the owner of the searched home. See e.g., United States v. Bullard, 645 F.3d 237, 244 (4th Cir. 2011) (searching cabinets exceeds the scope of a protective sweep).

As such, the Madison County Defendants' motion to dismiss will be denied with regard to the Plaintiff's § 1983 claims against Deputy Gosnell

and Deputy Doe in their individual capacities for violating her rights under the Fourth Amendment.

### C. State Law Claims

In Count VII of the Amended Complaint, the Plaintiff asserts a litany of what she terms "intentional and dignitary tort claims" under North Carolina law, including "conspiracy to oppress," "obstruction of justice," "criminal trespass," "malicious abuse of service of process; "misconduct in public office"; and "unwarranted unauthorized home invasion and invasion of privacy." [Doc. 11 at 33-34]. To the extent that the Plaintiff attempts to assert state claims against Deputy Gosnell and Deputy Doe related to the search of her residence on March 11, 2016, such claims shall be allowed to proceed. With respect to the rest of the claims asserted against Deputy Gosnell and Deputy Doe, and against any of the other Defendants, the Court concludes for the same reasons set forth above that the Plaintiff has failed to state a cognizable claim and therefore these state law claims are dismissed with prejudice.

### D. John Doe and Mary Doe Defendants

In the Amended Complaint, the Plaintiff also names as Defendants "John Does, Mary Does, as yet unknown, and others unnamed." [Doc. 11 at 3]. The Plaintiff makes no specific factual allegations with respect to these

Doe Defendants, except to include oblique references to "others unnamed and/or unknown" when alleging constitutional violations by Defendant Mackey and the Madison County Defendants. [See id. at 30]. Besides Deputy Doe, the Plaintiff does not allege that any Doe Defendant was personally involved in the events of March 11, 2016. For the reasons stated above with respect to Defendant Mackey and the Madison County Defendants, the Court concludes that the Plaintiff has not stated any plausible claims under federal or state law for the alleged violation of her constitutional rights by these Doe Defendants. Accordingly, the Plaintiff's claims against "John Does, Mary Does, as yet unknown, and others unnamed" are hereby dismissed with prejudice.

### E. Service on Deputy Doe

The Plaintiff has thus far failed to identify or serve Deputy Doe. Because the claims against Deputy Doe in his individual capacity will be proceeding, the Plaintiff must identify and serve Deputy Doe. As such, the Plaintiff shall have sixty (60) days from the entry of this order to identify Deputy Doe and effectuate service on him. If the Plaintiff fails to do so, the claims against Deputy Doe will be dismissed without prejudice.

# O R D E R

**IT IS, THEREFORE, ORDERED** that:

(1)    The Motion to Dismiss filed by Defendant Mackey [Doc. 24] is **GRANTED**, and all of the Plaintiff's claims against Defendant Mackey are hereby **DISMISSED WITH PREJUDICE.**

(2)    The Motion to Dismiss Plaintiff's Amended Complaint filed by the Defendants Forrest Gilliam, James Harwood, Bobby Gosnell, Bobby Gosnell Transport, County of Madison, Madison County Sheriff's Department, Madison County Department of Social Services, Connie M. Harris, and Mandie Sluder [Doc. 20] is **GRANTED IN PART AND DENIED IN PART**. The Motion is **DENIED** with regard to the Plaintiff's claims under 42 U.S.C. § 1983 and North Carolina law against Defendants Gosnell and Doe with regard to the alleged search that occurred on March 11, 2016.  The Motion is **GRANTED** with regard to all other claims, particularly including those against Defendants Forrest Gilliam, James Harwood, Bobby Gosnell, Bobby Gosnell Transport, County of Madison, Madison County Sheriff's Department, Madison County Department of Social Services, Connie M. Harris, and Mandie Sluder, and those claims are hereby **DISMISSED WITH PREJUDICE.**

(3)    The Plaintiff's claims against the Defendant identified as "John Doe Insurance Company" and "John Doe Surety Insurance Company" are hereby **DISMISSED WITH PREJUDICE**.

(4)    The Plaintiff's claims against the Defendants identified as "John Does, Mary Does, as yet unknown, and others unnamed" are hereby **DISMISSED WITH PREJUDICE**.

(5)    The Plaintiff shall have sixty (60) days from the entry of this Order to identify and effectuate service on Deputy Doe.  The Plaintiff is advised that failure to identify and serve Deputy Doe within the time specified will result in the dismissal of the Plaintiff's claims against this Defendant without prejudice.

**IT IS SO ORDERED.**

Signed: February 25, 2020

Martin Reidinger
United States District Judge