UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
Civil Action No. 1:19-cv-00082-MR-WCM

| | |
|---|---|
| DELTA WALSH, <br><br> Plaintiff, <br><br> v. <br><br> FORREST GILLIAM, *et al.* <br><br> Defendants. | **DEFENDANT JOSHUA BURCHFIELD'S MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S PRE-ANSWER MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** <br><br> **Fed. R. Civ. Pro. 12(b)(1) and 12(b)(6)** |

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Joshua Burchfield[1] hereby submits this Memorandum of Law in Support of his Pre-Answer Motion to Dismiss Plaintiff's Second Amended Complaint and respectfully moves the Court for an order dismissing each of Plaintiff's claims with prejudice and for an order staying these proceedings pending the Court's ruling on Defendant Burchfield's Motion to Dismiss. In

---

[1] Deputy Joshua Burchfield previously was known as Deputy John Doe in this matter.

support, Deputy Burchfield states as follows:

## I. SUMMARY OF THE ARGUMENT

As will be demonstrated, each of Plaintiff's claims in her Second Amended Complaint against Deputy Burchfield are subject to dismissal pursuant to Federal Rules of Procedure 12(b)(1) and 12(b)(6). The Court previously dismissed all of Plaintiff's claims in this lawsuit except: (1) Her individual capacity claims against Deputy Gosnell and Deputy Burchfield for allegedly violating her Fourth Amendment rights based upon a purported warrantless search of her home after the arrest of Frank Gooden (Doc. 44, pp. 28, 31); and (2) her state law claims "to the extent that the Plaintiff attempts to assert state claims against Deputy Gosnell and Deputy [Burchfield] related to the search of her residence on March 11, 2016...." (*Id.*, p. 32).

Regarding the alleged warrantless search of her home, Plaintiff has not asserted that Deputy Burchfield participated in that search. Rather, those allegations are directed at Deputy Gosnell. Further, Plaintiff's Second Amended Complaint [Doc. 56, pp. 8, 24] and affidavit testimony submitted by Plaintiff previously [Doc. 40-1, p. 1, ¶¶2, 6] establish that her minor children were home alone with Frank Gooden at the time of his arrest. A well-established exception to the warrant requirement permits a law enforcement officer to make a lawful warrantless entry into a residence for the purpose of checking on the welfare of minor children within

2

the home. Thus, Deputy Burchfield's and Deputy Gosnell's entry into Plaintiff's residence concurrent with Deputy Burchfield's arrest of Mr. Gooden constituted a lawful warrantless entry based upon exigent circumstances.[2]

With respect to each of Plaintiff's state law claims, she repeatedly pleads that all of these state law tort claims are brought pursuant to the North Carolina State Tort Claims Act and the doctrine of pendant federal jurisdiction. (Doc. 56, pp. 20, 32) However, in North Carolina, sheriffs and sheriff's deputies are part of local government and are not "the State" for purposes of the State Tort Claims Act. Thus, the Court lacks jurisdiction over Plaintiff's N.C. State Tort Claims against Deputy Burchfield as well as Deputy Gosnell.[3] Finally, even if Plaintiff had not brought her tort claims pursuant to the N.C. State Tort Claims Act, each of the alleged tort claims

---

[2] Defendants do not concede the entry was non-consensual.

[3] Even if Plaintiff's N.C. State Tort Claims Act claims were cognizable against the Defendant-Deputies, which they are not, the Court would lack subject matter jurisdiction because: (1) Plaintiff failed to, and has failed to plead, that she administratively exhausted her State Tort Act claims – a prerequisite to pursuing such claims in a court of law; and (2) at the latest, the three-year statute of limitations on these claims expired effective March 11, 2019 and thus, Plaintiff cannot pursue these claims under the Tort Claims Act by attempting to administratively exhaust at this point. *See Nanny's Korner Day Care Ctr., Inc. v. N. Carolina Dep't of Health & Human Servs., Div. of Child Dev.*, 837 S.E.2d 560, 563 (N.C. Ct. App. 2020)(The accrual of the statute of limitations period typically begins when the plaintiff is injured or discovers he or she has been injured. However, when the General Assembly provides an effective administrative remedy by statute, that remedy is exclusive and the party must pursue and exhaust it before resorting to the courts"). Further, the State of North Carolina has not consented to suit against itself in federal court regarding State Tort Act claims. *See Byrd v. North Carolina*, CIV. NO. 3:08CV70-W, 2008 WL 2953573, at *4 (W.D.N.C. June 17, 2008), *report and recommendation adopted,* No. 3:08-CV-00070-FDW, 2008 WL 2782839 (W.D.N.C. July 7, 2008), *aff'd,* 298 F. App'x 287 (4th Cir. 2008).

either fails to exist as a matter of law, or if it exists, Plaintiff has failed to state a claim upon which relief can be granted.

## II. <u>PROCEDURAL BACKGROUND</u>

On March 11, 2019, Plaintiff filed a Complaint in this matter in which she was allowed to proceed *in forma pauperis*. (Doc. 1, 3). She then filed an Amended Complaint on May 9, 2019. (Doc. 11). In response, the Madison County Defendants filed a Pre-Answer Motion to Dismiss and Memorandum of Law in Support thereof (Docs. 20, 21).[4] Plaintiff responded in opposition (Doc. 33), and Defendants replied (Doc. 42) to Plaintiff's Response. The Court ruled on Defendants' Motion to Dismiss resulting in the dismissal with prejudice of the vast majority of Plaintiff's claims and causes of action as follows (Doc. 44):

1. Plaintiff's causes of action pursuant to 42 U.S.C. § 1985 (Count I) and § 1986 (Count IV) for conspiracy to violate Plaintiff's civil rights were dismissed for failure to state a claim.

2. Plaintiff's causes of action pursuant to 42 U.S.C. § 1981 (Count II) and § 1982 (Count VI) for discrimination based on race were dismissed for failure to state a claim.

3. Plaintiff's causes of action pursuant to 42 U.S.C. § 1988 (Count V) and § 1343 (Count VII) were dismissed for failure to state a claim because

---

[4] The Madison County Defendants include Madison County, Madison County Manager Gilliam, Madison County Sheriff Harwood, Deputy Gosnell, Deputy Doe (now known as Deputy Joshua Burchfield), Madison County Sheriff's Department, Madison County Department of Social Services, Connie M. Harris, and Mandie Sluder. (Doc. 44, p. 6). Following the identification of Deputy John Doe as Deputy Joshua Burchfield, counsel for Deputy Burchfield accepted service of process in his behalf on July 8, 2020. Upon Defendant's Motion, the Court granted Defendant through and including August 12, 2020 to respond to Plaintiff's Second Amended Complaint.

4

these statutes are jurisdiction statutes that do not give rise to an independent cause of action.

4. All of Plaintiff's claims against the Madison County Defendants relating to alleged actions prior to March 11, 2016 were dismissed.

Further, regarding claims related to actions alleged to have occurred on March 11, 2016, the following claims were dismissed with prejudice:

5. All claims asserted by Plaintiff on behalf of her minor children.

6. All claims asserted by Plaintiff regarding the arrest of Frank Gooden pertaining to rights personal to Mr. Gooden.

7. All claims against the Madison County Defendants based on conspiracy theories.

8. All claims against Bobby Gosnell Transport.

9. All official capacity claims against Deputies Gosnell and Burchfield were dismissed as duplicative.

10. All claims that Deputy Gosnell or Deputy Burchfield trespassed on Plaintiff's property were dismissed as meritless.

Although the majority of Plaintiff's claims and causes of action against the Madison County Defendants, including Deputy Burchfield, were dismissed by the Court as described above, Plaintiff's Second Amended Complaint restates each of the allegations and Counts that were dismissed by the Court on February 25, 2020. (Doc. 44). Recognizing that Plaintiff's claims described above in paragraphs 1 - 10 have been dismissed with prejudice, Deputy Burchfield now responds to Plaintiff's Second Amended Complaint by filing his Pre-Answer Motion to

5

Dismiss, and in support thereof, his Memorandum of Law.[5]

## III. FACTS

In the interest of brevity, Deputy Burchfield incorporates by reference the facts set forth in the Court's previous Order. (Doc. 44, pp. 5 – 9).

## IV. STANDARD OF REVIEW

Plaintiff's Second Amended Complaint should be dismissed under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Applying the standards set out below to the allegations of Plaintiff's Second Amended Complaint, the only outcome is for the dismissal with prejudice of all claims brought by Plaintiff against Deputy Burchfield.

### A. Rule 12(b)(1) Standard

---

[5] To the extent Plaintiff may attempt to argue that all of her causes of action survived the Court's Order (Doc. 44) as to Deputy Burchfield, this would be incorrect inasmuch as the Order explicitly dismissed the claims described in paragraphs 1 – 10 above as to Deputy John Doe, who is now known to be Deputy Burchfield. Further, the Court's Order established the "law-of-the-case" in this lawsuit. Consequently, the identical causes of action against Deputy Burchfield, which were previously dismissed with prejudice by the Court as to the Madison County Defendants, are subject to dismissal as to Deputy Burchfield pursuant to the "law-of-the-case" doctrine. The "law-of-the-case" doctrine recognizes that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Graves v. Lioi*, 930 F.3d 307, 318 (4th Cir. 2019) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)) (internal quotation marks omitted). Once the law of the case has been established, "it must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal unless: (1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice." *Sejman v. Warner-Lambert Co.*, 845 F.2d 66, 69 (4th Cir. 1988) (quoting *EEOC v. Int'l Longshoremen's Ass'n*, 623 F.2d 1054, 1058 (5th Cir. 1980)) (internal quotation marks and alteration omitted). Given that none of the exceptions to its application exist here, the doctrine must be followed.

6

Plaintiff bears the burden of proving that subject matter jurisdiction exists. *Evans v. B. F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). The existence of subject matter jurisdiction is a threshold issue the court must address before considering the merits of the case. *Jones v. Am. Postal Workers Union,* 192 F.3d 417, 422 (4th Cir. 1999). "When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.* (quotation omitted).

**B. Rule 12(b)(6) Standard**

In order to survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). To be "plausible on its face," a plaintiff must demonstrate more than "a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. Rather, a plaintiff must "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling [it] to relief, i.e., the 'plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). Further, Rule 8 of the Federal Rules of

7

Civil Procedure "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1949 (2009). Further, for purposes of Rule 12(b)(6), "we are not required to accept as true the legal conclusions set forth in a plaintiff's complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Finally, although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense. *See Richmond, Fredericksburg, & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993).

Significantly, while *pro se* pleadings are liberally construed and held to a less stringent standard that formal attorney-drafted pleadings, this does not transform the court into an advocate for the *pro se* plaintiff. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (per curiam); *United States v. Wilson,* 699 F.3d 789, 797 (4th Cir. 2012), *cert. denied,* 133 S.Ct. 2401 (2013). Even when reviewing a *pro se* Complaint:

> Only those questions which are squarely presented to a court may properly be addressed. *Weller v. Dept. of Soc. Servs. for City of Baltimore*, 901 F.2d 387, 391 (4th Cir. 1990). Giving 'liberal construction' does not mean that the Court can ignore a *pro se* plaintiff's clear failure to allege facts that set forth a cognizable claim. 'Principles requiring generous construction of *pro se* complaints ... [do] not require ... courts to conjure up questions never squarely presented to them.' *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) *cert. denied*, 475 U.S. 1088 (1986).

8

*Wells v. Powers,* No. 2:16-cv-1060, 2016 WL 6070088, at *3 (D.S.C. Sept. 12, 2016), *report and recommendation adopted,* No. 2:16-cv-1060, 2016 WL 6039163 (D.S.C. Oct. 14, 2016).

## V. LEGAL ARGUMENT

### A. Dismissal is Proper Pursuant to Fed.R.Civ.Pro. 12(b)(1) for Lack of Subject Matter Jurisdiction Regarding Plaintiff's North Carolina State Tort Claims Act Claims

Each of Plaintiff's state law tort claims has been brought specifically under the North Carolina State Tort Claims Act. (Doc. 56, pp. 20, 32). Plaintiff cites N.C.G.S. §143-291 through § 143-300.1 in support of her assertion that the Court possesses pendant jurisdiction over her claims brought pursuant to the North Carolina State Tort claims Act. North Carolina General Statutes, Article 31 of Chapter 143, which is cited by Plaintiff as the jurisdictional basis of her state law tort claims, is titled "Tort Claims against State Departments and Agencies." Thus, it is evident Plaintiff has deliberately and knowingly chosen to pursue her state law tort claims under the N.C. State Tort Claims Act. Plaintiff has characterized her claims as "intentional tort claims" (Doc. 56, p. 20) and as "intentional and dignitary tort claims, pursuant to the North Carolina Tort Claims Act and the doctrine of pendant jurisdiction…." (*Id.,* p. 32).

Plaintiff's tort claims brought pursuant to the N.C. State Tort Claims Act fail for a number of reasons. First, in North Carolina, sheriffs and sheriff's deputies are part of local government and are not "the State" for purposes of the State Tort Claims

9

Act. *See Wilcoxson v. Buncombe Cty.,* 129 F. Supp. 3d 308, 216 (W.D.N.C. 2014) *quoting Boyd v. Robeson County,* 169 N.C. App. 460, 468, 621 S.E.2d 1, 6 (2005). Thus, the Court lacks subject matter jurisdiction over Plaintiff's tort claims under the N.C. State Tort Claims against Deputy Burchfield (as well as Deputy Gosnell). Second, even if the State Tort Claims Act applied to the Defendant-Deputies, which it does not, Plaintiff has failed to plead that she followed the mandatory administrative exhaustion requirements, which are a prerequisite to bringing any such claim in a court of law. *See* N.C.G.S. §143-291 *et seq.*; *see also Nanny's Korner Day Care Ctr., Inc. v. N. Carolina Dep't of Health & Human Servs., Div. of Child Dev.*, 837 S.E.2d 560, 563 (N.C. Ct. App. 2020); *Alston v. N.Carolina A & T State Univ.,* 304 F.Supp. 2d 774, 783 (M.D.N.C. 2004)(N.C. law requires administrative exhaustion of State Tort Act claims before recourse to the courts can be sought). Third, each of Plaintiff's state law tort claims is characterized as an "intentional tort" or as an "intentional and dignitary" tort, and intentional acts are not compensable under the State Tort Claims Act. *See White v. Trew,* 366 N.C. 360, 736 S.E.2d 166 (2013). Finally, the State of North Carolina has not consented to suit against itself in federal court regarding State Tort Act claims. *See Byrd v. North Carolina*, CIV. NO. 3:08CV70-W, 2008 WL 2953573, at *4 (W.D.N.C. June 17, 2008), *report and recommendation adopted,* No. 3:08-CV-00070-FDW, 2008 WL 2782839 (W.D.N.C. July 7, 2008), *aff'd,* 298 F. App'x 287 (4th Cir. 2008). Thus, as a matter

of law, each of Plaintiff's state law tort claims against Deputy Burchfield should be dismissed with prejudice.[6]

### B. Dismissal is Proper Pursuant to Fed.R.Civ.Pro. 12(b)(6) for Failure to State a Plausible Claim against Deputy Burchfield for Violating Plaintiff's Fourth Amendment Rights

#### 1. Plaintiff has not Alleged that Deputy Burchfield Unlawfully Searched her Residence

Plaintiff's individual capacity claims against Deputy Gosnell and Deputy Burchfield for allegedly violating her Fourth Amendment rights based upon a purported warrantless search of her home after the arrest of Frank Gooden survived the Madison County Defendants' Motion to Dismiss. (Doc. 44, pp. 28, 31). However, an examination of Plaintiff's Second Amended Complaint reveals that she did not alleged that Deputy Burchfield unlawfully searched her home. Rather, she attributes the allegedly unlawful search to Deputy Gosnell:

> Officer Joshua Burchfield was standing outside the door, armed, and in full uniform, and asked, "Are you Frank Gooden?" Gooden identified himself, and Officer Joshua Burchfield immediately handcuffed him and told him that he had a warrant for his arrest. Then Officer Gosnell appears from the corner of the house with an aimed firearm in place, in a loud intimidating voice, "I thought you'd come out with guns blazing!" Gooden replied, "we have no guns." Gosnell pushed and shoved Gooden, while handcuffed, inside the house from the front porch/deck to a chair in the living room, [and] conducted himself as though Gooden was a violent criminal. Defendant Gosnell then instructed Officer "J" to "shoot him if he moves!"

---

[6] Dismissal of Plaintiff's state law tort claims against Deputy Burchfield also should result in dismissal of these claims against Deputy Gosnell pursuant to the law of the case doctrine. Please refer to footnote 5 herein regarding the law of the case doctrine.

> Meanwhile, Gosnell is rambling through Gooden's wallet, and apparently took away and removed his Government issued, Department of Defense Contractor's card. Gosnell started asking in a loud, demanding tone of voice, "where are all those assault weapons and explosives?" Officer Gosnell walked through Plaintiff's house opening cabinets, rummaging, and slamming doors; opening and slamming drawers, and throwing clothing everywhere; kicking over a cat litter box; and yelling in a loud tone over and over, traumatizing said minor children, and demanded to know where the guns were hidden.
>
> (Doc. 56 at 24).

Plaintiff's Second Amended Complaint does not plausibly allege that Deputy Burchfield violated her Fourth Amendment rights by conducting an unlawful search of her home following the arrest of Frank Gooden. Rather, she states that Deputy Burchfield stayed in place guarding Gooden and then took him into custody and left. *Id.* The allegations against Deputy Burchfield do not state a claim under the Fourth Amendment and should be dismissed with prejudice.

### 2. Deputy Burchfield's Initial Entry into Plaintiff's Residence was Lawful Based upon a Well-Established Exception to the Warrant Requirement - Exigent Circumstances

Upon the arrest of Gooden, Deputy Burchfield's entry into Plaintiff's residence was lawful and authorized by the existence of exigent circumstances, a well-established exception to the search warrant requirement. Plaintiff's Second Amended Complaint [Doc. 56, pp. 8, 24] and affidavit testimony submitted by Plaintiff previously [Doc. 40-1, p. 1, ¶¶2, 6] establish that her minor children were home alone with Frank Gooden at the time of his arrest. The absence of responsible

12

adult supervision for minor children is an exigent circumstance justifying a warrantless entry. *See United States v. Taylor,* 624 F.3d 626, 632 (4th Cir. 2010); *Pleasants v. Town of Louisa,* 524 F. App'x 891, 896 (4th Cir. 2013). Thus, Deputy Burchfield's warrantless entry into Plaintiff's residence did not violate Plaintiff's Fourth Amendment rights because the exigency of ensuring the safety and responsible supervision of Plaintiff's minor children in the absence of Gooden, who was being transported to Buncombe County (Doc. 56, p. 24), justified the warrantless entry.

### 3. Alternatively, Deputy Burchfield is Entitled to Qualified Immunity

Alternatively, Deputy Birchfield is entitled to dismissal of Plaintiff's Fourth Amendment claims against him based on the defense of qualified immunity. *See Slattery v. Rizzo*, 939 F.2d 213, 216 (4th Cir. 1991) (The purpose of the qualified immunity is to "remove most civil liability actions, except those where the official clearly broke the law, from the legal process well in advance of the submission of the facts to a jury."). Law enforcement officers enjoy the protection of qualified immunity from suits under § 1983 "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton,* 483 U.S. 635, 638 (1987). The application of qualified immunity is appropriate "if a reasonable officer possessing the same information *could* have believed that his conduct was lawful." *Slattery v. Rizzo, supra*.

13

The doctrine of qualified immunity shields public officials from damages in actions for violations of federal rights unless their conduct was unreasonable in light of clearly established law. *Elder v. Holloway*, 510 U.S. 510, 512 (1994). Further, government officials performing discretionary functions are entitled to qualified immunity from liability for civil damages to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982); *Winfield v. Bass,* 106 F.3d 525, 530 (4th Cir. 1997) (en banc). "The doctrine [also] protects police officers and public officials from claims of constitutional violations 'for reasonable mistakes as to the legality of their actions.'" *Merchant v. Bauer,* 677 F.3d 656, 661 (4th Cir.), *cert. denied,* 133 S.Ct. 789 (2012) (*quoting Saucier v. Katz,* 533 U.S. 194, 206 (2001)). Further, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law," *Dunbar v. Lindsey*, 905 F.2d 754, 763 (4th Cir. 1990), and "gives ample room for mistaken judgments." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991). Significantly, to determine whether a right is clearly established for purposes of qualified immunity, the right must be established by the U. S. Supreme Court or the Circuit Court of Appeals from the relevant district court, not courts from other circuits. *Wilson v. Layne,* 141 F.3d 111, 114 (4th Cir. 1988)(en banc).

Even assuming, arguendo, that Plaintiff had identified a clearly established constitutional right allegedly violated by Deputy Birchfield, which she has not, none of the conduct ascribed to Deputy Burchfield by Plaintiff could possibly defeat qualified immunity. Here, there is no evidence that Deputy Burchfield made mistakes, acted in a plainly incompetent manner or knowingly violated the law. A reasonable officer in Deputy Burchfield's position would have believed that he could enter Plaintiff's residence based upon exigent circumstances in order to ensure the safety and supervision of Plaintiff's minor children upon the arrest of the only adult at home, Gooden. Assuming, for discussion only, that Plaintiff had identified a violation of a clearly established constitutional right attributable to Deputy Burchfield, he nevertheless would be entitled to the defense of qualified immunity. Plaintiff's Fourth Amendment claims against Deputy Burchfield in his individual capacity are therefore subject to dismissal.

### C. Alternatively, Dismissal is Proper Pursuant to Fed.R.Civ.Pro. 12(b)(6) for Failure to State a Claim Regarding Plaintiff's State Tort Claims

As established above, the Court does not have subject matter jurisdiction regarding Plaintiff's state law tort claims because they have been brought specifically under the North Carolina State Tort Claims Act, which does not apply to the acts of a sheriff's deputy. Nevertheless, even if the State Tort Claims Act were not the jurisdictional basis asserted by Plaintiff, her state law tort claims fail to state

15

a claim upon which relief can be granted. Based upon the Court's prior order (Doc. 44), plaintiff may pursue her state law claims "to the extent that the Plaintiff attempts to assert state claims against Deputy Gosnell and Deputy [Burchfield] related to the search of her residence on March 11, 2016…." Plaintiff attempts to pursue the following state law tort claims:

1. Conspiracy to Oppress. (Doc. 56, p. 33). The Court ruled previously that all of Plaintiff's claims of conspiracy were dismissed with prejudice. (Doc. 44).

2. Obstruction of Justice. (Doc. 56, p. 33). Here, Plaintiff's tort claim is based upon Defendants conspiring to violate Plaintiff's civil rights. As established, however, the Court ruled previously that all of Plaintiff's claims of conspiracy were dismissed with prejudice. (Doc. 44).

3. Criminal Trespass. (Doc. 56, p. 34). Criminal trespass is not a civil tort. Moreover, the Court the Court ruled previously that all of Plaintiff's claims of trespass were dismissed with prejudice. (Doc. 44).

4. Malicious Abuse of Service of Process. (Doc. 56, p. 34). This claim pertains to the arrest of Gooden and his personal rights regarding the existence of an arrest warrant. The Court ruled previously that all of Plaintiff's claims in behalf of Gooden's personal rights were dismissed with prejudice. (Doc. 44).

5. Misconduct in Public Office. (Doc. 56, p. 34). This claim relates to Plaintiff's allegations of conspiracy, and the Court ruled previously that all of Plaintiff's

16

claims of conspiracy were dismissed with prejudice. (Doc. 44). Moreover, it does not appear there is any legal authority supporting a theory that misconduct in public office creates a private cause of action sounding in tort.

6. Unwarranted, unauthorized home invasion and invasion of privacy. (Doc. 56, p. 34). Home invasion does not appear to constitute a state law tort claim. Regarding invasion of privacy, as established above, Deputy Burchfield's entry in to Plaintiff's residence was justified based upon exigent circumstances, and Plaintiff has not alleged that he engaged in an unlawful search in violation of the Fourth Amendment.

7. Forcible breaking and entering. (Doc. 56, p. 34). This appears to be related to Plaintiff's claims of trespass. The Court ruled previously that all of Plaintiff's claims of trespass were dismissed with prejudice. (Doc. 44).

Therefore, to the extent that Plaintiff's state law tort claims are not dismissed for lack of subject matter jurisdiction, they are subject to dismissal for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

## CONCLUSION

For the foregoing reasons, Defendant Burchfield respectfully requests that his Pre-Answer Motion to Dismiss be GRANTED, that this matter be stayed pending

the Court's ruling on Defendant's Motion and that Plaintiff's claims against him be DISMISSED WITH PREJUDICE.

Respectfully submitted, this the 12th day of August 2020.

     CRANFILL SUMNER & HARTZOG, LLP

     BY: /s/Stephanie H. Webster
        PATRICK H. FLANAGAN, State Bar #17407
        STEPHANIE H. WEBSTER, State Bar # 12164
        *Attorneys for Defendants Gilliam, Harwood, Gosnell, Burchfield, Bobby Gosnell Transport, County of Madison, Madison County Sheriff's Department, Madison County DSS, Harris and Sluder*
        Post Office Box 30787
        Charlotte, North Carolina 28230
        Telephone: (704) 332-8300
        Facsimile: (704) 332-9994
        phf@cshlaw.com
        swebster@cshlaw.com

# CERTIFICATE OF SERVICE

This is to certify that the undersigned has this day electronically filed the foregoing ***Defendant Joshua Burchfield's Memorandum of Law in Support of Defendant's Pre-Answer Motion to Dismiss Plaintiff's Second Amended Complaint*** with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to the following counsel:

>Jamie A. Stokes
>jamie.a.stokes@gmail.com
>*Attorney for Defendant Dewain Mackey*

and will deposit the foregoing document in the United States Mail, postage prepaid, addressed to the following:

>Delta Walsh
>P.O. Box 208
>Mars Hill, NC 28754
>*Pro se Plaintiff*

This the 12th day of August 2020.

>CRANFILL SUMNER & HARTZOG, LLP
>
>BY: /s/Stephanie H. Webster
>PATRICK H. FLANAGAN, State Bar #17407
>STEPHANIE H. WEBSTER, State Bar # 12164
>*Attorneys for Defendants Gilliam, Harwood, Gosnell, Bobby Gosnell Transport, County of Madison, Madison County Sheriff's Department, Madison County DSS, Harris and Sluder*
>Post Office Box 30787
>Charlotte, North Carolina 28230
>Telephone: (704) 332-8300
>Facsimile: (704) 332-9994
>phf@cshlaw.com
>swebster@cshlaw.com

19